HENRY OIL CO. v. HEAD.

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 29, 1914.)

1. DAMAGES (§ 120*)—MEASURE—BREACH OF CONTRACT.

In an action for damages for breach of a contract to sink an oil well 1,200 feet, or to oil or gas in paying quantities, in consideration of which plaintiff had assigned to defendant leases on 3,000 acres in the vicinity of the test oil wells, which then had a market value of $3,700, plaintiff, prevailing, was entitled to recover that amount, being the consideration received by defendant, though the value of oil leases in that locality, had practically vanished.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 291–305; Dec. Dig. § 120.*]

2. CONTRACTS (§ 328*)—ACTION FOR BREACH—DEFENSES.

In an action for damages for defendant's breach of contract to sink an oil well, defendant could not be heard to say that plaintiff would have derived no benefit from a completion of its contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1571–1584; Dec. Dig. § 328.*]

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by J. E. Head against the Henry Oil Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Mathis & Kay, of Wichita Falls, for appellant. Carrigan, Montgomery & Britain, of Wichita Falls, for appellee.

SPEER, J. J. E. Head sued the Henry Oil Company to recover damages for breach of a contract to dig a certain oil well, and from a judgment in his favor, the defendant company has appealed.

Head, the appellee, owned a great many thousand acres of oil leases in Archer county, leased from Henry J. Scott and others, and conveyed a portion of his holdings to the Henry Oil Company in consideration that that company would sink a well to a depth of 1,200 feet, or to oil or gas in paying quantities, said contract containing other stipulations not necessary to notice in this statement. The facts attending the contract are thus found by the trial court:

"I find that the contract set forth in the plaintiff's petition was made between plaintiff and defendant. Defendant at that time was under a contract to develop, by boring for oil and gas, the lands leased in this contract and had begun operations by placing a rig on the property and materials for the operation of the well. The Henry Oil Company undertook by said contract to dig to a depth of 1,200 feet in any event, and if oil was not discovered by the time they reached that depth, then they contracted to sell their rig and outfit at actual cost to plaintiff to enable him to complete the well to the depth required in his contract with the owners of the soil. As a consideration for the boring of the well, the plaintiff transferred to defendant, and assigned to them leases on 2,200 acres of the Scott lands adjoining the well, and also leases on various small tracts in Archer and other counties aggregating 3,000 acres, said leases being all near to or in the vicinity of the test wells being bored or in prospect of being bored by oil operators. I find that at the time this contract was made there was considerable activity in the market for so-called 'wildcat' leases, or leases in places where prospect wells were being bored. Oil had been discovered in Archer county, south of the Scott lands, a distance of 10 or 12 miles, and the leases transferred by defendant to plaintiff had a market value, which I find aggregated the sum of $3,700, $1 per acre for Scott land and 50 cents per acre for the scattered lands. I find that the defendant sold a few other leases in the vicinity of the Scott well, but not many while work was progressing. The Henry Oil Company took charge of the well and proceeded to work on it, but abandoned it at the depth of about 900 feet, without the consent and against the protest of the plaintiff, Head.

"I find that at the time the well was abandoned, which was about the middle of June, 1912, several test wells in Archer county had been abandoned, others had proven to be 'dry holes,' and the market value of leases in that section had gone to pieces, and none were selling in the market. That the prospect of finding oil in the Scott test well was remote in the judgment of the oil men at that time.

"I find that same conditions, with reference to the market, existed throughout the whole section of country over which the leases transferred to the defendants were scattered."

[1] These findings are not attacked by appellant, but the sole contention is that the

trial court adopted an improper measure of damages in that he allowed appellee to recover $3,700, the reasonable market value of the leases transferred to appellant at the time of their transfer, or, in other words, that the profits which appellee probably could have made out of a fortuitous sale of his leases were too indefinite and uncertain as to form the basis of a recovery at all. A sufficient answer to this contention is, we think, that no recovery was allowed for lost profits, but the judgment is limited to what appellee actually paid appellant in pursuance of their contract. This, we think, is the very least damages to which appellee under any circumstances would be entitled. In every actionable cause actual compensation is the true end to be attained. To allow just compensation in every case demands the application of different rules for measuring the damage according to the circumstances of each case. In the present case we have no doubt but that appellee would have been entitled to complete the well undertaken by appellant, and to have charged appellant with the costs thereof, but the undisputed evidence is to the effect that this would have exceeded the amount of the judgment. We think appellant has no cause of complaint since the recovery is limited to the amount actually expended on the contract.

[2] Appellant will not be heard to say that appellee would have derived no benefit from a completion of its contract, for that is no concern of its. Letot v. Edens, 49 S. W. 109; Chapman v. Clements (Ky.) 56 S. W. 646; Gayton v. Day, 178 Fed. 249, 101 C. C. A. 609. Appellant received from appellee property of the value of $3,700, for which it undertook to do a specific thing, which it has failed to do. The least that can be expected of it is that it should return the consideration received.

The judgment of the district court is therefore in all things affirmed.